## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| **MARK WAYNE GRIGSBY, ET AL.** | **CIVIL ACTION NO. 5:20-cv-01640** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LAKE POINTE PLACE HOMEOWNERS ASSOCIATION INC. ET AL** | **MAG. JUDGE MARK L.  HORNSBY** |

### REASONS FOR DECISION

Pending here is an appeal from the Bankruptcy Court filed by Appellants Mark Wayne Grigsby and Darita Lashon Grigsby (collectively "Appellants" or "the Grigsbys.") [Doc. No. 1]. Appellants seek relief from the Judgment entered December 3, 2020 denying their discharge under 11 U.S.C. §§§ 727(a)(2)(B), (a)(4)(A), and (a)(6)(A).  The issues in this appeal are:

> 1) Whether the Bankruptcy Court's determination under 11 U.S.C. § 727(a)(2)(B) that the Grigsbys, with the intent to hinder and defraud their creditors, concealed estate assets after they filed for bankruptcy is clearly erroneous;
>
> 2) Whether the Bankruptcy Court's determination under 11 U.S.C. § 727(a)(4)(A) that the Grigsbys fraudulently made false statements under oath is clearly erroneous; and
>
> 3) Whether the Bankruptcy Court's determination under 11 U.S.C. § 727(a)(6)(A) that the Grigsbys refused to comply with an order of the bankruptcy court is clearly erroneous.

For the following reasons, the Bankruptcy Court's Judgment is AFFIRMED.

### BACKGROUND

The Grigsbys purchased a lot in the Lake Ponte Place subdivision in Shreveport, Louisiana in May 2014.  They received a construction loan from Barksdale Federal Credit Union ("Barksdale") in April 2016 and built a house on the lot.

As residents of the Lake Pointe neighborhood, the Grigsbys were subject to the rules and regulations established by the Lake Pointe Homeowners Association, Inc. (the "Homeowners Association").  The Homeowners Association charged residents dues and water usage fees.  The Grigsby's did not pay dues in 2018 or 2019, nor did they pay their 2017 property taxes.

The Grigsbys also made no payments on their Barksdale note, and Barksdale commenced foreclosure proceedings. A sheriff's sale was scheduled for January 9, 2019.  The day before the sale was to be held, January 8, 2019, the Grigsbys retained an attorney to file a last-minute chapter 13 bankruptcy petition seeking an automatic stay to prohibit the foreclosure sale. The Grigsbys signed the bankruptcy petition under penalty of perjury. They also signed a list of creditors which they affirmed was true and correct to the best of their knowledge.  Ten days after filing their petition, the Grigsbys filed the required official bankruptcy schedules ("Schedules"), statements of financial affairs ("Statements"), and a proposed chapter 13 plan.

On the morning of January 9, 2019, Barksdale sent a request to the Caddo Parish Sheriff Department to halt the sheriff's sale.   After learning that the sheriff's sale had been stopped, the Grigsbys determined they no longer wanted bankruptcy protection, and they requested that their counsel dismiss their case.  Counsel subsequently withdrew, and the Grigsbys filed a *pro se* motion to dismiss on February 4, 2019.

Both the Homeowners Association and Barksdale objected to the Grigsby's dismissal motion, and they both moved for either conversion of the bankruptcy case to chapter 7 or dismissal with sanctions.  They asserted that the Grigsbys filed the case in bad faith and for improper purposes.

The Bankruptcy Court held a hearing on the motions, but the Grigsbys, who were now *pro se*, did not appear. The Grigsbys state that because they believed their motion for dismissal

would be granted, they chose to not attend the hearing. On March 13, 2019, the Bankruptcy Court issued its decision ("Conversion Order") finding that the Grigsbys had filed their chapter 13 petition in bad faith and converting the case to chapter 7.  The Grigsbys did not appeal the Conversion Order.

All of the Grigsbys' interests in any non-exempt property belonged to the chapter 7 bankruptcy estate as of the date the case was converted to chapter 7. John Luster was appointed the chapter 7 trustee.

After their case was converted to chapter 7, the Grigsbys retained new bankruptcy counsel and filed amended Schedules and Statements shortly before their meeting of creditors. The Grigsbys signed the amended Schedules and Statements under penalty of perjury.

 Barksdale filed an unopposed Motion for Relief from Stay, which was granted on April 18, 2019, to subsequently foreclose on the house on August 14, 2019.

The Grigsbys claimed on their original and amended Schedules that they were not owed a tax refund. Yet they later admitted under oath that they received a $9,190 federal income tax refund in March 2019. [Transcript of 341(a) Meeting of Creditors, Doc. No. 3-47, p. 23.]. The Grigsbys did not cooperate with the chapter 7 Trustee's efforts to collect the federal income tax refund. They also ignored the trustee's request for copies of income tax returns and bank statements. [Trial Transcript, Day 1, Doc. No. 32, p. 17]. The Trustee later obtained IRS transcripts concerning the Grigsbys' tax returns, but by that time the Grigsbys had already received the refund. [*Id*., pp. 17; 19-20].

The Trustee moved for an order compelling the Grigsbys to turn over the refund they received [Doc. No. 10, p. 6]. The Grigsbys objected to the trustee's motion and introduced into evidence bank statements showing that they had received a $9,190.00 refund for their 2018

federal income taxes [Doc. No. 3-35, pp. 41-42]. Approximately $4,000.00 of this refund remained in their bank account when the case was converted to chapter 7 and it therefore became property of the estate [Doc. No. 11-2, p. 5]. These same statements also showed that the Grigsbys received a $1,001.84 income tax refund from the Louisiana Department of Revenue in April 2019, which they also failed to disclose [Doc. No. 3-35, p. 83].

On August 8, 2019, the Bankruptcy Court directed the Grigsbys to turn over both income tax refunds (the "Turnover Order") [Doc. No. 3-35, p. 83; Doc. No. 11-2 at 16]. Because the IRS had deposited the refund into the account before the Grigsbys' bankruptcy was converted to chapter 7, the Bankruptcy Court directed that the Grigsbys would have to turn over only what remained of the federal refund on the date their case was converted to chapter 7. [Id., p. 83]. This amount totaled approximately $5,000 [Doc. No. 11-2, p. 5; Doc. No. 3-35, p.  83]. The Grigsbys did not comply with the Turnover Order [Doc. No. 32, p. 21].

 The Trustee and the Homeowners Association filed adversarial motions to bar the Grigsby's discharge pursuant to 11 U.S.C. § 727(a)(2)(A), § 727(a)(4)(A), § 727(a)(2)(B) and 727(a)(6)(A) or, in the alternative, dismiss this bankruptcy case pursuant to 11 U.S.C. § 707(b). In their complaints, they alleged that the Grigsbys fraudulently filed bankruptcy, intentionally failed to disclose assets, gave a false oath that their Schedules were accurate, and failed to turn over their tax refunds to the Trustee. The Grigsbys denied all allegations.

The Bankruptcy Court conducted a two-day trial and rendered a decision on December 3, 2020.  The Bankruptcy Court denied the Grigsbys a discharge for the three independent reasons set forth above.

This appeal followed.

4

## LAW AND ANALYSIS

### A.     Standard of Review

"The Fifth Circuit has consistently held that the standard of review applicable to bankruptcy appeals in a district court is the same as the standard applied by a Court of Appeals to a district court proceeding." *Wells Fargo Bank, N.A. v. Jones*, 391 B.R. 577, 586 (E.D. La. 2008); *AT&T Univ. Car Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 402 (5th Cir. 2001) (we apply the same standard of review to the analysis of the bankruptcy court's order as did the district court). Under those standards, "the bankruptcy court's factual findings are reviewed for clear error; its legal conclusions and findings on mixed questions of fact and law are reviewed *de novo*." *Id*.

A finding of fact is "clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003) (quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992)). The appellate court defers to the bankruptcy court's determinations of witness credibility. *Id*. And it gives "deference to the bankruptcy court's 'wide discretion'" to deny discharge. *See, e.g., Graham Mortg. Corp. v. Goff (In re Goff)*, 579 F. App'x 240, 245 (5th Cir. 2014).

### B.     Analysis

Although the Bankruptcy Court needed to establish only one ground under 11 U.S.C. § 727(a) to deny the Grigsby's discharge, this Court will nevertheless review all three grounds established by the Bankruptcy Court for denying the discharge.

### 1.      Denial of Discharge under 11 U.S.C. § 727(a)(2)(B)

The Court will first consider whether the Bankruptcy Court correctly denied the Grigsby's discharge under 11 U.S.C. § 727(a)(2)(B).  Section 727(a)(2)(B) provides that a "court shall grant the debtor a discharge[ ] unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the estate, after the date of the filing of the petition."

A party objecting to a discharge under § 727(a)(2)(B) must show that: (1) the debtor transferred, removed, concealed, destroyed, or mutilated property of the estate; (2) after the date of the filing of the petition; (3) with the intent to hinder, delay, or defraud a creditor. *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989). Because parties rarely reveal their subjective intent, "[a]ctual intent...may be inferred from the actions of the debtor and may be proven by circumstantial evidence." *Id*. at 91.

The Bankruptcy Court denied the Grigsby's discharge after finding that they concealed a boat, a 2017 Bose home theater system, an Apple watch, a 14 karate gold chain necklace from 2013, a 2016 gold diamond bracelet, a 10 x 18 Big Tex utility trailer, and Federal and state income tax refunds.[1] [Case No. 5:20-cv-01637, Doc. No. 4, p. 30].   The Bankruptcy Court found that all of these items were property of the estate which were concealed after the filing of the

---

[1] The Bankruptcy Court found that the Grigsbys had not fraudulently concealed several additional items, including three television sets, Kansas City Southern Railroad stock, a Charles Schwab investment account, and ownership interests in several legal entities including a LLC.  [*Id*., pp. 31–33].

petition. [*Id*., p. 33].  The Bankruptcy Court determined there was a concealment because the Grigsby's failed to list the assets on their bankruptcy Schedules post-petition [*Id*.].

Specifically, with regard to the utility trailer, the Bankruptcy Court stated it had observed a video showing Mr. Grigsby using the trailer and had heard Mr. Grigsby's testimony that he thought he might still have title in his own name.  Additionally, the Bankruptcy Court found that Mr. Grigsby clearly had a "right of use" of the property as Mr. Grigsby described it [*Id*., p. 34]. The Bankruptcy Court observed that in Louisiana, a usufructuary interest is a form of ownership. The Bankruptcy Court concluded that the Grigsbys tried to conceal the utility trailer from the bankruptcy Trustee and from their creditors [*Id*., pp. 34-35].

With regard to the Federal and state income tax refunds, the Bankruptcy Court found that the Grigsby's admitted they received these refunds after the commencement of the case, that these refunds constituted a property of the bankruptcy estate, and that they spent the proceeds of these refunds on lavish items including a luxury vacation [*Id*., pp. 30-31].

On appeal, the Grigsby's contend they had no intent to hinder, delay, or defraud.  They assert they were merely confused or lacked understanding.  They further assert that the only reason they filed bankruptcy was to prevent the imminent foreclosure sale of their home, so they hastily filed an emergency skeleton Chapter 13 bankruptcy petition. As to the video of Mr. Grigsby using the utility trailer, they insist they did not own the trailer but were merely using it to move furniture from the foreclosed home.   They argue that they had no intent to deceive, and that the errors and omissions were just inadvertent mistakes that went uncured. Finally, they argue that the value of the allegedly concealed assets was minimal when compared to their debt.

This Court finds that the Bankruptcy Court's judgment is sufficiently supported by the record.  The Grigsbys admit that they failed to disclose the substantial tax refunds they received

7

and which they conceded were estate property.  The record supports the Bankruptcy Court's rejection of the Grigsbys' claims that the utility trailer, fishing boat, jewelry, and other household goods were not property of the estate. Mr. Grigsby was captured on video using the utility trailer after the bankruptcy filing.

The Bankruptcy Court's finding that the Grigsbys demonstrated fraudulent intent is also supported by the record.  The Bankruptcy Court was justified when it found that the Grigsbys concealed their true equitable and beneficial interest in the utility trailer by its continuing use after they filed their bankruptcy petition.  Additionally, the record shows that the Grigsbys hindered the chapter 7 trustee's efforts to collect the federal income tax refund by refusing to provide copies of their federal income tax refunds and bank statements [Doc. No. 32, pp. 19-20]. While they admitted to having received their federal refund at the meeting of creditors, they failed to disclose that they also had received a state income tax refund [Doc. No. 3-47, pp. 16-62]. Rather than repay their creditors, they spent the refunds on such things as vacations and jewelry. [Doc. No. 32, p. 66]. Further, the Grigsbys concealed assets, collectively, were not of small value, as the tax refunds alone were worth approximately $5,000.00.

The Bankruptcy Court did not clearly err when it concluded the Grigsbys, with the intent to hinder and defraud their creditors, concealed estate assets after they filed for bankruptcy.  This Court thus affirms the denial of the Grigsby's discharge pursuant to Section 727(a)(2)(A).

### 2.      Denial of Discharge under 11 U.S.C. § 727(a)(4)(A).

This Court will next consider whether the Bankruptcy Court was correct in finding that the discharge could also be denied under 11 U.S.C. § 727(a)(4)(A).

Section 727(a)(4)(A) provides that a "court shall grant the debtor a discharge [ ] unless ... the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or

account." *Robinson v. Worley*, 849 F.3d 577, 587 (4th Cir. 2017) (noting that "all that the provision requires for a denial of discharge is a single false account or oath" (citing *Schreiber v. Emerson* (*In re Emerson*), 244 B.R. 1, 28 (Bankr. D.N.H. 1999))); *Smith v. Grondin* (*In re Grondin*), 232 B.R. 274, 277 (1st Cir. B.A.P. 1999) ("According to the plain language of § 727(a)(4)(A), all that is required for a denial of discharge is a single 'false oath or account.' ").

"To prevail on a claim under this subsection, an objecting plaintiff must prove by a preponderance of the evidence 'that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case'." *Judgment Factors, L.L.C. v. Packer (In re Packer)*, 816 F.3d 87, 94 (5th Cir. 2016).

The Bankruptcy Court found that this section applies because the Grigsbys filed their Statements and Schedules wherein they knowingly and intentionally omitted several assets with material value from their Schedules, failed to disclose information about a number of actions wherein they were parties, and misrepresented their monthly expenses in an attempt to mislead the Court and their creditors [Case No. 5:20-cv-01637, Doc. No. 4, p. 35].   The monthly expenses that the Bankruptcy Court found were misrepresented were their monthly expenses prior to the commencement of the case. [*Id.*]

The Bankruptcy Court noted that the Grigsbys disputed that they actually signed their Statements and Schedules.  However, the Bankruptcy Court found otherwise because they testified at their 341 meeting of creditors that they signed their Schedules, the documents admitted into evidence clearly shows that they signed their Statements and Schedules, and because Ms. Grigsby invoked her Fifth Amendment privilege when asked whether she signed the documents. [*Id.*, p. 37].

9

On appeal, the Grigsbys assert that they hastily filed an emergency skeleton Chapter 13 bankruptcy petition to prevent the imminent foreclosure sale of their home, which was the only reason that they filed bankruptcy. Upon discovery of what they thought was another solution, they requested that their counsel immediately dismiss their case, but counsel subsequently withdrew before curing the petition, which had omissions and incorrect Schedules. In their quest to dismiss their case, the Grigsbys state they carelessly, ignorantly, and inadvertently signed their incorrect Schedules. They further state that they did not know what they signed, that they did not understand the Schedules, and that they did not read the Schedules with comprehension. They further assert their counsel were ineffective. The Grigsbys conclude that their signatures should not be held as false oaths but rather as honest mistakes.

This Court finds that the Bankruptcy Court did not abuse its discretion in denying the Grigsby's a discharge under Section 727(a)(4)(A).   The record supports the Bankruptcy Court's findings that Mr. and Ms. Grigsby made numerous knowing, fraudulent, and materially false oaths both in their sworn bankruptcy Schedules and Statements and in their testimony under oath.

Mr. and Ms. Grigsby attested to the truth of their Schedules and Statements, both by signing them under penalty of perjury and by testifying under oath that they were accurate at their creditors meeting. "It is well established that, because statements made by a debtor in his schedules and statements, and at his meeting of creditors, are signed under pains and penalties of perjury, they constitute 'oaths' for the purposes of § 727(a)(4)(A)." *Kaler v. Charles (In re Charles)*, 474 B.R. 680, 684 (B.A.P. 8th Cir. 2012); *accord In re Retz*, 606 F.3d 1189, 1196-97 (9th Cir. 2010).

10

At the creditors meeting, the Grigsbys attested to the completeness of their sworn Schedules even though they omitted material assets, including their income tax refunds, the utility trailer, and other items [Doc. No. 3-47, pp. 18, 20-21]. The Grigsbys also falsely overstated their expenses as of the Petition Date [Doc. No. 32, pp. 59-60]. The record supports the Bankruptcy Court's finding that Mr. and Ms. Grigsby made false oaths.

Although the Grigsbys dispute the materiality of the false statements, these false statements are material because they relate to "the discovery of assets" and to "the existence and disposition of [their] property." *Beaubouef v. Beaufouef (In re Beaufouef)*, 966 F.2d 174 (5th Cir. 1992). The values at issue were not insignificant, as the combined value of the federal and state income tax refunds was at least several thousand dollars. The Bankruptcy Court thus did not clearly err in finding that Mr. and Ms. Grigsby's false statements were material.

The record further supports a finding that the Grigsbys intentionally made false oaths with respect to the tax refunds. The Grigsbys retained the use of these funds after they were deposited into their bank account [Doc. No. 32, pp. 66-67]. Their overall course of conduct supports a finding of fraudulent intent. Their refusal to provide information to the chapter 7 trustee and to obey the court's Turnover Order supports a finding of fraudulent intent [*Id.*, p. 21]. While the Grigsbys claimed they lacked sufficient funds to comply with the Turnover Order, their bank statements revealed that they did indeed have such funds but instead of turning them over they spent them on vacations and jewelry [*Id.*, pp. 65-66].

Similarly, the record supports a finding that the Grigsbys acted with fraudulent intent with respect to the utility trailer. They claimed they gave the trailer to a contractor in lieu of payments but never provided evidence to support that claim [*Id.*, pp. 103, 119]. They retained

use of the trailer and admitted they believed they likely still had title [*Id*]. They clearly retained the benefit of this trailer after the bankruptcy filing [*Id*].

The Grigsbys claim their errors and omissions were "inadvertent mistakes" which arose either from "confusion" or a "believable lack of understanding." [Doc. No. 38, pp. 11-12]. They also argue that they relied on former bankruptcy counsel to assist with preparation of the original and amended Schedules and Statements [*Id*., p. 15]. However, a debtor may assert this defense only when his "reliance was reasonable and in good faith." *In re Gartner*, 326 B.R. 357, 374 (Bankr. S.D. Tex. 2005) (denying discharge under section 727(a)(4) after debtor admitted to reading and signing original and amended schedules under penalty of perjury). This defense is "undermined where the debtor has admitted under oath to having read and signed" the schedules and statements. *Id*. A debtor's "purported inexperience with financial affairs does not negate the fact that he made false oaths by knowingly swearing to false information." *In re Sholdra*, 249 F.3d at 383.

The Grigsbys signed both original and amended Schedules and Statements under penalty of perjury [Doc. No. 21-2, pp. 50, 57; Doc. No. 21-4, pp. 15, 63]. They also attested under oath at their meeting of creditors to having read their amended Schedules and Statements under penalty of perjury before signing them [Doc. No. 3-47, pp. 17-18].

Even assuming that the Grigsbys' omissions and errors in their original Schedules and Statements were due to mistake or inadvertence, they had ample opportunity to correct these errors through amendments yet failed to do so. The Grigsbys also had an opportunity to amend their Schedules to disclose the income tax refunds after the meeting of creditors, which they did not do [Doc. No. 3-11, p. 7].

The Bankruptcy Court did not clearly err when it concluded the Grigsbys fraudulently made false statements under oath.  This Court thus affirms the denial of the Grigsby's discharge pursuant to Section 727(a)(4)(A).

**C.     Denial of Discharge under 11 U.S.C. § 727(a)(6)(A)**

The Court will next consider whether the Bankruptcy Court was correct in finding that the discharge could also be denied under 11 U.S.C. § 727(a)(6)(A). Under section 727(a)(6)(A), the court may deny a discharge if a "debtor has refused, in the case—(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A).

The Bankruptcy Court denied the discharge under section 727(a)(6)(A) on the grounds that the Grigsbys refused to obey the lawful order that it issued compelling them to turn over their tax refund (the "Turnover Order") [Case No. 5:20-cv-01637, Doc. No. 4, p  38].

"[A]s it is commonly used and understood, the term 'lawful order of the court' refers to any command, direction, or instruction issued by a court which is permitted by law." *Standiferd v. United States Trustee*, 641 F.3d 1209, 1213 (10th Cir. 2011). "Denial of discharge under § 727(a)(6) for refusing to obey a court order follows the general proposition that a court order 'must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" *In re Martinez*, 126 F. App'x 890, 897 (10th Cir. 2005) (*quoting Maness v. Meyers*, 419 U.S. 449, 459 (1975)). "[I]t is totally within the discretion of the bankruptcy court to find a particular violation of the court's order so serious as to require denial of discharge." *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 755 (9th Cir. 1985) (affirming denial of discharge where debtors violated court order).

The party objecting to discharge must demonstrate that the debtor received the order and failed to comply. *In re Wells*, 426 B.R. 579, 609 (Bankr. N.D. Tex. 2006) (citations omitted). The burden then shifts to the debtor to explain his or her failure to comply. *Id*. The bankruptcy court may deny an objection to discharge under section 727(a)(6)(A) if the debtor shows that "failure to comply with an order was due to inadvertence and mistake." *Solomon v. Barman (In re Barman)*, 237 B.R. 342, 349 (Bankr. E.D. Mich. 1999). However, a debtor may not claim "inadvertence and mistake" if the evidence shows that he decided to disregard the order after being made aware of it. *Id*.

On appeal, the Gribsbys argue that it was not proven that they willfully or intentionally disobeyed the Bankruptcy Court's order.  They assert that at the time of the order they did not have the lump sum to immediately pay the refund, nor did they receive instructions or a payment plan to do so from the Chapter 7 Trustee.  They further assert that, as a result of the hearing on August 7, 2019, they had to amend their 2017 and 2018 taxes. Upon filing the amended tax returns, the IRS reversed the previously issued refunds and invoiced the Grigsbys for $19,291.89 plus penalties and interest. This, according to the Grigsbys, created a genuine issue of material fact on whether they should pay just the IRS or also the Trustee.

The Grigsbys additionally assert they were experiencing financial hardship due to the lack of permanence of residence and their imminent divorce causing them to live separate and apart.

This Court finds the record supports the Bankruptcy Court's finding that the Grigsbys refused to obey a lawful order.  They do not dispute that they were aware of the Turnover Order, nor do they dispute that they did not turn the tax refunds over to the Trustee. The order did not direct them to respond to a material question or to testify. As the Bankruptcy Court noted, the

14

Grigsbys' bank statements show that they had nearly $4,000 in their bank account on the date the Turnover Order was entered yet they failed to remit those funds to the chapter 7 trustee [Doc. No. 11-2, p. 5]. The Grigsbys also deposited nearly $100,000.00 into their bank accounts in the 11 months following entry of the Turnover Order. [Doc. No. 32, p. 65]. While some of these monies were used for living expenses, the Grigsbys also used these funds for non-essential items such as vacations and jewelry [*Id.,* p. 66].

The Grigsby's argument that they were not required to comply with the Turnover Order because they amended their federal income tax returns is of no avail, because they could have sought relief from the Turnover Order.   "An order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and properly proceedings." *Maness v. Meyers*, 419 U.S. 449, 459 (1975).  The Grigsbys did not seek such relief.

This Court finds that the Bankruptcy Court was correct in denying the discharge on this basis.  In so ruling, the Bankruptcy Court stated in pertinent part:

> And lastly, there can be no question that the Debtor refused to obey the order.  I know that it's refusal.  I know that it's not just mere oversight, because the Debtors had sufficient funds to pay the Trustee the amount of money at issue.  And what did the Debtors do?  They used that money for their own purposes, to take a vacation.
>
> It gives me no pleasure in denying a discharge to debtors.  One of the nice aspects of my job is that I get to help people.  I get to help debtors.  Debtors, all debtors that come before me are burdened with debt.  But here's what a discharge is for:  It's for an honest but unfortunate debtor.
>
> I do not have honest Debtors.  That's not what came before me.  I was asked by the Defendants' counsel to consider the facts and all of the facts, including the Defendants' intent and motives.  I believe that I have fulfilled my duty in considering the facts, all of the facts.  And I have made conclusions regarding the intents and motives, not

15

just on a gut check but based upon the evidence that I witnessed in
a two-day trial.

[Case No. 5:20-cv-01637, Doc. No. 4, p. 39].

The Bankruptcy Court did not clearly err when it concluded the Grigsbys refused to
comply with a lawful order of the Bankruptcy Court.  This Court thus affirms the denial of the
Grigsby's discharge pursuant to Section 727(a)(6)(A).

**III.    CONCLUSION**

For these reasons, the Bankruptcy Court's judgment is **AFFIRMED**.

Monroe, Louisiana, this 15th day of November 2021.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

16